UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BELL HELICOPTER TEXTRON INC.
600 E. Hurst Blvd (State Highway 10)
Fort Worth, Texas 76053

       Plaintiff,

v.

EUROCOPTER
Aeroport International Marseille Provence
13725 Marignane Cedex
France

       Defendant.

Civil Action No. _____

**Jury Trial Demanded**

## COMPLAINT

Plaintiff Bell Helicopter Textron Inc. ("Bell Helicopter"), an American helicopter and tiltrotor company, for its complaint against Defendant Eurocopter, a French corporation, by and through its undersigned attorneys, states and alleges as follows:

### INTRODUCTION

1. Bell Helicopter is a pioneer in helicopter aviation and brings this suit to defend the 429 helicopter ("the Bell 429"), which is quite possibly the most advanced light twin instrument flight rules (IFR) helicopter ever created. Without any warning, Eurocopter filed suit in Canada alleging that the landing gear on the Bell 429 infringes a Canadian patent. In June 2009, in a thinly veiled attempt to disrupt Bell Helicopter's exhibition at the industry's largest trade show in Paris, Eurocopter showed up unannounced at Bell Helicopter's exhibition to execute a seizure order based on a French patent.

2. Bell Helicopter believes that Eurocopter's allegations have no merit and brings this suit against Eurocopter's corresponding U.S. patent to prove that the landing gear on the

Bell 429 does not infringe any valid patent claim. Bell Helicopter is pleased that, as of July 1, 2009, the Bell 429 has received certification from the Federal Aviation Administration (FAA) and looks forward to delivering the Bell 429 to the many customers who eagerly anticipate its arrival.

3. Bell Helicopter is a leader in helicopter research and development, which has resulted in numerous patents to its credit over the years.

## PARTIES

4. Plaintiff Bell Helicopter is a corporation organized under the laws of the State of Delaware having a principal place of business at 600 E. Hurst Blvd (State Highway 10), Fort Worth, Texas 76053.

5. Bell Helicopter, a wholly owned subsidiary of Textron Inc., is an American helicopter and tiltrotor company.

6. Bell Helicopter is a pioneer in helicopter aviation. It was founded on July 10, 1935 as Bell Aircraft Corporation, focusing on designing and building of fighter aircraft. In 1941, Bell began its first foray into helicopter research and development and soon developed the Bell 30, its first full-size helicopter. Soon thereafter Bell developed the Bell 47, the first helicopter rated by a civil aviation authority in the world, and the Bell 47 became a civilian and military success.

7. Textron purchased Bell Aerospace in 1960. The helicopter division was renamed as Bell Helicopter Company and in a few years, with the success of the UH-1 during the Vietnam War, it established itself as the largest division of Textron. In January 1976, Textron changed the name of the company to Bell Helicopter Textron. Bell Helicopter has

since grown to become a pioneering industry leader in vertical-lift aircraft and has delivered more than 35,000 aircraft to customers around the world.

8. Upon information and belief, Defendant Eurocopter is a corporation constituted under French law, with its principal place of business at Marseille International Airport – Provence 13725 Marignane – Cedex, France.

9. Upon information and belief, Eurocopter is a subsidiary owned 100% by EADS (European Aeronautic, Defense and Space Company).

## NATURE OF THE ACTION

10. This is an action for declaratory judgment that Bell Helicopter does not infringe U.S. Patent No. 5,860,621 and that U.S. Patent No. 5,860,621 is invalid.

11. There is an actual and justiciable controversy, as alleged herein.

## PATENT IN SUIT

12. Upon information and belief, Eurocopter is the lawful assignee of all right, title and interest in U.S. Patent No. 5,860,621 (the "'621 patent").

## JURISDICTION AND VENUE

13. These claims rise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent laws of the United States, 35 U.S.C. §§ 100 *et seq*.

14. Subject matter jurisdiction is proper in this Court under 28 U.S.C. §§ 1331, 1338, 2201 and 2202.

15. This Court has personal jurisdiction over Eurocopter under 35 U.S.C. § 293 because Eurocopter is a patentee not residing in the United States who has not designated a person residing within the United States on whom may be served process or notice of proceedings affecting the '621 patent or rights thereunder. Eurocopter stipulated to the

jurisdiction of this Court under 35 U.S.C. § 293 in its Motion to Dismiss and for Misjoinder of Parties filed in Civil Action No. 4:09-cv-377 (N.D. Tex.), Dkt. No. 31, at 2 n.1 ("Eurocopter stipulates that pursuant to 35 U.S.C. § 293, it may be sued in the District of Columbia for declaration of non-infringement and invalidity of its '621 Patent ....").

16. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 35 U.S.C. § 293 because Eurocopter is an alien who has not designated a person residing within the United States on whom may be served process or notice of proceedings affecting the '621 patent or rights thereunder. Eurocopter has conceded that venue is proper in this district. *See* Motion to Dismiss and for Misjoinder of Parties filed in Civil Action No. 4:09-cv-377 (N.D. Tex.), Dkt. No. 31, at 14 ("The final subsection of 1391(b)(3) does not apply because there is another judicial district in which Bell's claims for declaratory judgment of non-infringement and invalidity could have been brought. Pursuant to 35 U.S.C. § 293, Bell's patent claims could properly have been filed in the District of Columbia.").

## BACKGROUND OF THE CONTROVERSY

17. Bell Helicopter and Eurocopter are the two largest distributors of commercial helicopters in the world, and they directly compete for the same base of potential customers. The largest market for helicopters is the United States, where approximately 50% of all commercial helicopters are operated.

18. Upon information and belief, Eurocopter is the owner by assignment of the U.S. '621 patent, French Patent No. FR 9,607,156 (the "French '156 patent"), and Canadian Patent No. 2,207,787 (the "Canadian '787 patent") (hereinafter, collectively the "Landing Gear Patents"). The Landing Gear Patents contain substantially identical disclosures and each makes

a claim of priority to the French '156 patent. The Landing Gear Patents are directed to helicopter landing gear with skids, particularly for light helicopters.

19. Eurocopter has aggressively enforced its foreign patents corresponding to the U.S. '621 patent against Bell Helicopter through an infringement suit in Canada and a seizure and infringement suit in France.

### Eurocopter's Patent Infringement Suit in Canada

20. Bell Helicopter manages a sister company in Canada, Bell Helicopter Textron Canada Limited ("Bell Helicopter Canada").

21. On May 9, 2008, Eurocopter and Eurocopter Canada Limited filed a legal action in Canada alleging, among other things, that Bell Helicopter Canada manufactures, distributes, uses, imports, offers for sale or sells in Canada the Bell 429 outfitted with a landing gear which allegedly infringes the Canadian '787 patent. Specifically, Eurocopter and Eurocopter Canada Limited alleged that the Bell 429's landing gear infringes at least claims 1, 7, 14 and 15 of the '787 Canadian patent.

22. The Canadian '787 patent asserted by Eurocopter is a Canadian counterpart of the U.S. '621 patent.

23. The asserted claims of the Canadian '787 patent and the claims of the U.S. '621 patent both relate to helicopter landing gear with skids having a particular configuration.

24. The Bell 429 is a helicopter designed and manufactured by Bell Helicopter Canada primarily for commercial use. The first Bell 429 prototypes were made in 2006 with a "first flight" being completed in February of 2007.

25. The advantages of the Bell 429 include its ability to perform in all conditions including high altitudes and hot climates, the ability to be used for a variety of commercial

applications, such as corporate transit or Emergency Medical Services (EMS), and its ability to accommodate a larger number of passengers and cargo than other helicopters in its class.

26. The skids subject to Eurocopter's claims of infringement were built in the United States, and will be manufactured entirely in the United States for production units by an indirect wholly owned subsidiary of Bell Helicopter.

27. Upon information and belief, Eurocopter seeks several different forms of relief from the Canadian Court, including but not limited to:

- An order of interlocutory and permanent injunction directing Bell Helicopter Canada to cease infringing any claim of the Canadian '787 patent;

- An order that Bell Helicopter Canada cease manufacturing, outsourcing for manufacture, distributing, using, importing, providing for sale or selling the landing gear or any portion of the landing gear which forms the subject of the invention described and claimed in the Canadian '787 patent, or any helicopter equipped with such landing gear;

- An order that Bell Helicopter Canada cease promoting the Bell 429 aircraft indicating directly or indirectly, expressly or implicitly, that the landing gear is a Bell Helicopter innovation; and

- An order condemning Bell Helicopter Canada to punitive damages in the amount of $25,000,000.

**Eurocopter's Seizure Action and Infringement Suit in France**

28. Eurocopter also filed a petition before the Civil Court of Paris, France for an infringement seizure against both Bell Helicopter and Bell Helicopter Canada. Eurocopter alleged that the Bell 429 manufactured abroad and imported, offered for sale, or sold in France infringes its French '156 patent.

29. Eurocopter requested an order of seizure based on alleged infringement of claims 1-5 and 8-12 of its French '156 patent.

30. The French '156 patent is a French counterpart of the U.S. '621 patent. The asserted claims of the French '156 patent and the claims of the U.S. '621 patent both relate to helicopter landing gear with skids having a particular configuration.

31. In exhibits to its petition, Eurocopter identified advertisements for the Bell 429 in a Bell Helicopter brochure and on Bell Helicopter's website as evidence in support of its petition. Eurocopter specifically identified the fact that the American company Bell Helicopter would show and offer for sale its Bell 429 at an air show June 15 to 21, 2009, at the Le Bourget airport, located approximately seven miles north northeast of Paris, France ("the Paris Air Show").

32. Eurocopter's petition to the Civil Court was misleading. First, Eurocopter claimed that Bell Helicopter was manufacturing and offering for sale an old landing gear design which Eurocopter knew or should have known Bell Helicopter was not in fact manufacturing or offering for sale, and was not representative of the Bell 429 which Bell Helicopter would exhibit at the Paris Air Show. Second, Eurocopter failed to disclose that it was already prosecuting patent infringement litigation in Canada and had the ability to obtain information regarding the Bell 429 landing gear in that litigation, so executing a seizure at Bell Helicopter's presentation at the Paris Air Show was unnecessary.

33. In support of its petition, Eurocopter included an article about the Bell 429 from Bell Helicopter's April 2008 newsletter. This article showed the Bell 429 with an old landing gear design, which had been abandoned. Eurocopter represented that Bell Helicopter was manufacturing and offering for sale this design, even though Eurocopter knew or should have

known that this old landing gear design had been replaced with an alternate design. The alternate design had been disclosed to the public and specifically to Eurocopter in the Canadian litigation.

34.   On June 3, 2009, Eurocopter had filed Written Representations in the Canadian litigation in support of its motion for leave to amend its statement of claim to accuse the alternate design. In its Written Representations, Eurocopter also identified pending discovery in Canada, claiming that information regarding the alternate design was covered by its discovery requests. At a hearing on June 8, 2009, the court in Canada indicated that Eurocopter's motion to amend would be granted and that discovery on its new claims could proceed.

35.   Though Eurocopter knew it already had leave of court in Canada to conduct discovery on this issue, Eurocopter elected to seek a seizure order in Paris based on a misleading petition which omitted these important facts. Eurocopter further made no attempt to contact Bell Helicopter or its counsel regarding its plan to conduct a seizure. In addition, Eurocopter made no attempt to arrange inspection of a Bell 429 in a manner which would not severely disrupt Bell Helicopter's exhibition at the Paris Air Show.

36.   Eurocopter's misleading petition to the Civil Court in Paris was an attempt to exploit the French judicial procedure for commercial gain, by disrupting important marketing activities of its American competitor Bell Helicopter.

37.   On June 11, 2009, the Chief Judge of the Civil Court of Paris granted an Order authorizing Eurocopter to have a seizure and searches performed on Bell Helicopter and Bell Helicopter Canada at the Paris Air Show based on Eurocopter's allegations that the Bell 429

infringes its French '156 patent. On June 16, 2009, a Service of Process of Order for Infringement Seizure issued against Bell Helicopter Canada and Bell Helicopter.

38. A critical aspect of marketing commercial helicopters is the display and demonstration of products at various air shows, and Bell Helicopter commits considerable resources to this effort. The oldest, largest, and most prestigious air show in the world is the Paris Air Show at Le Bourget Airport in Paris. This air show is held once every two years and all major aerospace manufacturers attend to demonstrate their products to potential customers. Major aerospace purchases and product debuts are often announced at the Paris Air Show.

39. Bell Helicopter's presentation at the Paris Air Show was one of Bell Helicopter's major marketing efforts this year for the Bell 429. Bell Helicopter invested heavily in its presentation for the Paris Air Show, renting a pavilion and shipping a full-size mock up of the Bell 429 and a working prototype aircraft to France. Bell Helicopter scheduled demonstration flights for customers on the prototype aircraft. Senior marketing and engineering personnel from Bell Helicopter's Fort Worth offices traveled to the Paris Air Show to participate in the presentation.

40. On June 16, 2009, patent counsel and a bailiff, acting on behalf of Eurocopter ("Eurocopter's agents"), showed up at Bell Helicopter's booth at the Paris Air Show and ordered Bell Helicopter's employees to allow them to photograph the exhibit and to turn over documents relating to the Bell 429's skid gear. Eurocopter's agents collected three business documents published by Bell Helicopter regarding its Bell 429. Eurocopter's agents were then transported to the heliport twice to inspect a Bell 429 which is the property of Bell Helicopter, first after it returned from a flight and later after portions were disassembled for the bailiff to

inspect the landing gear. Scheduled flight demonstrations were interrupted and ultimately suspended for a portion of the day to allow Eurocopter's agents to inspect the Bell 429.

41. These intrusive actions conducted at Eurocopter's request were highly disruptive to Bell Helicopter's exhibition and significantly impeded Bell Helicopter's ability to conduct business.

42. Additionally, in July 2009, Eurocopter served a Summons to Bell Helicopter and Bell Helicopter Canada notifying them that a proceeding was instituted against them in Paris, France alleging that the Bell 429 infringes Eurocopter's French '156 patent.

### The Immediate, Concrete and Substantial Controversy in the United States

43. On July 1, 2009, Bell Helicopter Canada obtained U.S. certification on the Bell 429, which is being marketed through Bell Helicopter. Eurocopter is competing aggressively with Bell Helicopter for potential customers, offering certain of their older models, but the market response to the Bell 429 has been very strong. The Bell 429 represents a major competitive challenge for Eurocopter, particularly with regard to U.S. commercial sales.

44. The landing gear for the Bell 429 is built in the United States and Bell Helicopter offers to sell the Bell 429 in the United States. Bell Helicopter currently has agreements with customers eager to purchase its Bell 429, and Bell Helicopter intends to deliver Bell 429 helicopters now that the Bell 429 has been received certification. Bell Helicopter fully intends to have the landing gear for the Bell 429 manufactured in the United States by its indirect wholly owned subsidiary in commercial quantities, continue offering to sell the Bell 429 in the United States, import the Bell 429 into the United States, and sell the Bell 429 in United States.

45. There is an immediate, concrete, and substantial controversy between Eurocopter and Bell Helicopter about whether the landing gear on the Bell 429 infringes any valid patent right possessed by Eurocopter. In view of Eurocopter's aggressive acts in suing in Canada for alleged infringement of the Canadian '787 patent and executing a seizure and subsequent judicial proceeding against Bell Helicopter in France for alleged infringement of the French '156 patent, Bell Helicopter has had and continues to have every reason to fear potential assertion of the counterpart U.S. '621 patent in the United States. Bell Helicopter has been placed in the position where it must either abandon its lawful rights to make the landing gear for its Bell 429 in the United States, and to offer to sell and sell in the United States, and import into the United States the Bell 429, or else risk prosecution.

46. Eurocopter's seizure executed against Bell Helicopter at the Paris Air Show—the largest air show in the industry—on June 16, 2009, illustrates Eurocopter's intention to disrupt Bell Helicopter's legitimate business interests. Plaintiff brings this action in part to remove the cloud of uncertainty that currently hangs over it regarding the '621 patent, and to protect its substantial investment in its Bell 429.

## COUNT I

### Declaratory Judgment of Non-Infringement, United States Patent No. 5,860,621

47. Plaintiff repeats and incorporates by reference each of the foregoing paragraphs of its complaint.

48. An actual and justiciable case or controversy exists between Eurocopter and Bell Helicopter concerning alleged infringement of the '621 patent, which requires a declaration of rights by this Court.

49. The Bell 429 helicopter as a whole, and its landing gear specifically, has not and does not infringe any valid and enforceable claim of the '621 patent.

50. The Bell 429 landing gear does not literally infringe the claims of the '621 patent because, for example, the Bell 429 landing gear do not meet the limitation of claim 1 requiring that "each of said skids comprises a front comprising an inclined transition zone with double curvature oriented transversely with respect to each said longitudinal support stretch to form together an integrated front cross-piece offset with respect to a front delimitation of a plane of contact of each said longitudinal support stretch of each of said skids."

51. The front of each of the skids in the Bell 429 landing gear is inclined upwards only. There is no double curvature at the front of each of the skids and no transverse orientation of the skids, and therefore no "inclined transition zone with double curvature oriented transversely with respect to each said longitudinal support" as required by claim 1.

52. The front cross-piece of the Bell 429 landing gear is attached to the skids behind the inclined front of the skids, is entirely separate from the skids, and is not an extension of the front of the skids. Therefore the Bell 429 landing gear does not meet the requirement of claim 1 that "each of said skids comprises a front comprising an inclined transition zone with double curvature oriented transversely with respect to each said longitudinal support stretch to form together an integrated front cross-piece."

53. Furthermore, the only region of curvature in each skid is the upwardly curved front end. The skids in the modified Bell 429 landing gear have no second region of double curvature oriented transversely to the skids, as required by Eurocopter's claims.

54. The Bell 429 landing gear does not infringe the claims of the '621 patent under the doctrine of equivalents. The Bell 429 landing gear do not meet the limitation "each of said

skids comprises a front comprising an inclined transition zone with double curvature oriented transversely with respect to each said longitudinal support stretch to form together an integrated front cross-piece offset with respect to a front delimitation of a plane of contact of each said longitudinal support stretch of each of said skids" under the doctrine of equivalents.

55. For example, the Bell 429 landing gear has no "inclined transition zone with double curvature," as claimed, either literally or by equivalence.

56. In addition, the front of the skids in the Bell 429 landing gear do not "stretch to form together an integrated front cross-piece." The cross-piece is attached to the skids at a point behind the front of the skids, and is not integrated with the front ends of the skids. Attachment of the cross-piece to the skids at a point behind the front of the skids is not equivalent to a landing gear in which the skids and crosspiece "stretch to form together an integrated front cross-piece."

57. Further, the description of the alleged invention in the '621 patent is inconsistent with a claim scope that would embrace the Bell 429 landing gear. The '621 patent makes clear that the "integrated" front cross-piece is a defining characteristic of the alleged invention, purportedly differentiating it from the prior art:

> For this purpose, landing gear *according to the invention*, of the type defined at the beginning, is characterized in that each of the said skids has at the front an inclined transition zone with double curvature orienting itself transversely with respect to the said longitudinal support stretches which stand on the ground, above the plane of the latter, *the two transition zones together constituting in this way an integrated front cross-piece* offset either forwards or backwards with respect to the front delimitation of the plane of contact of the said longitudinal support stretches of the skids on the ground.
>
> ... The front cross-piece, *which is thus integrated with the "skid" section*, will contribute to the overall energy balance and will have, thanks to the flexion of the said transition zones, a predominant function of absorption of the forces generated during hard and sliding landings: it will prevent the complete collapse of the landing gear towards the rear when the sliding speeds are very high.

'621 patent, col. 1, ll. 45–66 (emphasis added).

58.   For at least these reasons, Bell Helicopter is entitled to a declaratory judgment that the manufacture, use, offer for sale, sale in the United States or importation into the United States of the Bell 429 helicopter as a whole, and its landing gear specifically, does not infringe any valid and enforceable claim of the '621 patent.

## COUNT II

### Declaratory Judgment of Invalidity, United States Patent No. 5,860,621

59.   Plaintiff repeats and incorporates by reference each of the foregoing paragraphs of its second amended complaint.

60.   An actual and justiciable case or controversy exists between Eurocopter and Bell Helicopter concerning the invalidity of the '621 patent, which requires a declaration of rights by this Court.

61.   One or more claims of the '621 Patent is invalid for failure to meet the requirements of patentability under at least 35 U.S.C. §§ 102, 103, and/or 112.

62.   For example, at least claim 1 of the '621 patent is invalid as anticipated under 35 U.S.C. § 102(b), or as obvious under §§ 102(b)/103, by LeRoy R. Burrows et al., *Helicopter Obstacle Strike Tolerance*, presented at the 35th Annual National forum of the American Helicopter Society (Washington, D.C., May 1979).

63.   In particular, Figure 4(a) on page 79-7-5 of the article shows a helicopter landing gear, comprising a plurality of skids having a longitudinal support stretch for standing on ground and which are connected to a front cross-piece and a rear cross-piece for attachment to a structure of an aircraft by connecting devices, the rear cross-piece being fixed by ends of descending branches to a rear part of each said longitudinal support stretch, wherein each of

said skids comprises a front comprising an inclined transition zone with double curvature oriented transversely with respect to each said longitudinal support stretch to form together an integrated front cross-piece offset with respect to a front delimitation of a plane of contact of each said longitudinal support stretch of each of said skids.

64. Bell Helicopter is entitled to a declaratory judgment that the '621 patent is invalid.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bell Helicopter requests the following relief, and pray that the Court:

A. Enter judgment for Plaintiff and against Defendant on all counts asserted in this complaint;

B. Declare that Bell Helicopter has not infringed and that its planned activities will not infringe any valid and enforceable claim of U.S. Patent No. 5,860,621;

C. Declare that the claims of U.S. Patent No. 5,860,621 are invalid;

D. Enjoin Eurocopter, and its officers, directors, agents, counsel, servants, and employees and all persons in active concert or participation with any of them, from attempting to enforce the '621 Patent against Bell Helicopter or any customer of Bell Helicopter by reason of such customer's use of Bell Helicopter's products;

E. Award Plaintiff its costs;

F. Find this an exceptional case under 35 U.S.C. § 285 and award Plaintiff its attorneys' fees and expenses; and

G. Grant Plaintiff such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury as to all matters triable to a jury.

Dated: May 13, 2010                    Respectfully submitted,

*[signature]*

Scott L. Robertson
D.C. Bar No. 456104
GOODWIN PROCTER LLP
901 New York Ave. NW
Washington, DC 20001
Tel: (202) 346-4000
Fax: (202) 346-4444